Case 2:19-cv-00285-REB   Document 1-2   Filed 07/22/19   Page 1 of 9

Electronically Filed
5/17/2019 2:14 PM
First Judicial District, Bonner County
Michael W. Rosedale, Clerk of the Court
By: Angela Augustine, Deputy Clerk

Robin L. Haynes ISB #8425
GIANTlegal PLLC
304 W. Pacific Ave., Ste. 210
Spokane, WA 99201
P: (509) 596-1426
robin@giantlegal.net

Wendy J. Earle, ISB #7821
WENDY EARLE LAW, OFFICE LLC
120 E. Lake St., Ste. 205
Sandpoint, ID 83864
P: (208) 597-3400
wearle@idahowashingtonlawpractice.com

*Attorneys for Plaintiff*

IN THE DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT OF THE
STATE OF IDAHO, IN AND FOR THE COUNTY OF BONNER

| | |
|---|---|
| **BRANDY READ**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**BONNER COUNTY IDAHO**, a political subdivision of the State of Idaho,<br><br>Defendant. | NO. CV09-19-0752<br><br>**COMPLAINT** |

COMES NOW Plaintiff Brandy Read (hereafter, "Plaintiff" or "Read"), by and through her counsel of record GIANTlegal PLLC and Wendy Earle Law, LLC, and hereby alleges and complains against Defendant Bonner County, Idaho ("Defendant" or "Bonner County"), as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is an individual who at all times relevant hereto was a resident of Kootenai County, Idaho. Plaintiff if currently a resident of Spokane County, Washington.

COMPLAINT - 1

Buchanan, Barbara A.

2.     Defendant was at all times relevant hereto, and presently is, a municipal corporation and political subdivision and body politic of the State of Idaho. Among its powers is the power to sue and be sued.

3.     Venue is proper in this Court pursuant to Idaho Code §5-404 because Bonner County is a resident of Bonner County, Idaho.

4.     Jurisdiction is proper in this Court pursuant to Idaho Code §5-514 because the actions complained of arose in Bonner County, Idaho.

## RELEVANT FACTS

5.     On November 5, 2017, Read drove in snowy, dangerous conditions from her then-home in Kootenai County, Idaho to the 911 Dispatch Center ("911 Dept.") in Bonner County, Idaho where she had been employed off and on for the majority of the prior thirteen (13) years in various positions. She expected to work that night as scheduled. Instead, when Read arrived after a harrowing drive, she was met not in the facility, but in the parking lot, by Trace Drumwright ("Drumwright"), then the Director the 911 Dept. Drumwright handed Read a letter signed by Ror Lakewold ("Lakewold") dated November 2, 2017, notifying Read that she had been terminated. He also handed her a box containing her personal items that had been left at the office. Lakewold was then the Bonner County Undersheriff, as the 911 Dept. was part of the Bonner County's Sheriff's Department ("BC Sheriff Dept."). A true and correct copy of the letter is attached hereto as **Exhibit A.** At no point prior to meeting Drumwright in the parking lot did Read have any idea she was being terminated. Read had already received a pay raise during her probationary period but had not received a review.

6.     Read was first hired in the 911 Dept. in 2004. Between 2004 and her termination in 2017, Read worked off and on, but mostly on, at the 911 Dept. She was a supervisor for 7

COMPLAINT - 2

years during this time period, always willingly worked overtime, and received positive annual reviews. Each time she left and returned, personnel at the 911 Dept. basically begged Read to return. Each time, since BC personnel knew how knowledgeable and hardworking Read was, Read was given a quick orientation and sent to work. Read was never disciplined or otherwise provided with any negative comments or supervision prior to her termination in 2017.

7. Prior to her termination in a snowy parking lot, Read had begun working for the 911 Dept. on December 12, 2016. She was advised that she was being hired on a probationary basis pursuant to Section 300.4 of the Bonner County Employee Personnel Manual ("BC Manual") and that her employment was "at will" for the first year. This was the first time since her initial hire in 2004 that she had to serve a probationary employment period, despite having been a "re-hire" or "new hire" more than once in prior years. Under the probationary policy, employees **must** be provided a written evaluation at the six (6) month time period; the evaluation must be completed by the employee's supervisor. *See* BC Manual 300.4. At no time between her date of hire and her termination was Read evaluated by anyone in violation of the BC Manual.

8. In addition to a mandatory probationary period, Read was subjected to a series of personal, psychological questions post-interview, pre-employment as dictated by Sheriff's Dept. policies. Read had never been evaluated like this at any other time during her 13 years of employment, and nothing in her record indicated anything other than exceptional performance under pressure, even when faced with the most troubling situations.

9. In August 2017, prior to her termination, Read had a conversation with Drumwright regarding the handling of vacations and time off during the busy summer season. Priority was given to Amber Lindsay and her friends, who continually violated stated policies regarding the appropriate timing of vacation and days off during that time period. Drumwright

COMPLAINT - 3

did not respond well to Read's comments, stating words to the effect of "this is my house; anyone that causes a disruption in my house, I have no problem getting rid of…" In addition, Read complained that a lower level employee was having "sleep overs" at Lindsay's house as the employee was dating Lindsay's sister. These "sleep overs" were being unprofessional discussed at the office. At all relevant times, Lindsay was the 911 Dept. Operations Manager and should not have been permitting such sleep overs or discussions. Read also complained to Drumwright about a supervisor coming to work so intoxicated that the supervisor was vomiting at work – the party had been held at Lindsay's home. Drumwright's relationship with Read deteriorated after this discussion.

10. In the Lakewold termination letter, Read was directed to contact Cindy Binkerd ("Binkerd") in HR, which Read did. Read met with Binkerd in person for a conversation that Read recorded. During the meeting, Binkerd told Read in precise terms that the meeting was Read's "opportunity to be heard" pursuant to the BC Manual's "name clearing" process at 1000.2. In fact, Binkerd's in person meeting is nowhere near the name clearing procedure that is afforded Bonner County employees – specifically, pursuant to BC Manual 1000.2., an informal procedure between the employee and her Elected Officials with the Bonner County Board of Commissioners. Binkerd is not and was not an elected official at the time of Read's termination, nor has she ever been a Commissioner. Binkerd is not and was not an impartial decision maker.

11. Read was twice offered the opportunity to resign in lieu of being terminated both in person by Binkerd and in Lakewold's letter. Read had been working in her probationary period for over 11 months, knew her performance had been exemplary, and fully expected to become a "for cause" employee as afforded all Bonner County personnel. The offer of

COMPLAINT - 4

resignation confused her especially in light of the County's failure to perform a 6-month review as explicitly required by the BC Manual.

12. Since being terminated, Read has struggled to find comparable work in terms of rate of pay, level of benefits, and opportunity for advancement. Read is over 40 with many years of meaningful work ahead and a minor child to support. She simply reported inappropriate use of days off and vacation time, as well as an appearance of favoritism in the 911 Dept., and found herself terminated despite a previously exceptional work history. At not time did Bonner County afford her the process it promised her as a condition of employment – including a six (6) month mandatory review and a "name clearing" procedure with the Board of Commissioners, not a Human Resources employee.

## FIRST CAUSE OF ACTION
## BREACH OF BONNER COUNTY POLICY MANUAL AND IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

13. Read realleges the preceding paragraphs as if fully set forth herein.

14. Bonner County failed to provide her with a mandatory review within six (6) months of the start of her employment in December 2016; failed to advise her of her post-termination rights; lied to her about the "name clearing" and opportunity to be heard provisions of the BC Manual; and failed to provide an impartial decision maker. Read relied on and was bound to the BC Manual she signed upon re-gaining employment with Bonner County, just as Bonner County was bound to the explicit terms of the BC Manual it created.

15. She rightfully expected and justifiably relied on Bonner County to do what it explicitly promised to do in writing in the BC Manual.

16. As a direct and proximate result of Bonner County's failure to follow its own explicit policies, Read was damaged in an amount to be proven at trial.

COMPLAINT - 5

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED POLICY MANUAL

17. Read realleges the preceding paragraphs as if fully set forth herein.

18. Read had a reasonable expectation of continued employment with the 911 Dept. Since 2007, she had worked on and off for the majority of her time for the 911 Dept. including 7 years as Supervisor. She was never disciplined or otherwise provided with any negative comments or disciplinary supervision prior to her unexpected and unsupported termination in 2017.

19. This was the first time that Read had been placed on a probationary period throughout the course of her employment with BC County of more than a decade. She was placed in the position with a minimum of training based on her past history and experience in 911.

20. During her probationary hearing, she did not receive the mandatory 6-month review. She did receive a raise. Approximately 11 months into employment with the County and without the benefit of a required review, with no disciplinary notices, and without having received a raise, Read reasonably believed that BC County viewed her as having successfully completed the probationary period.

21. Read was terminated approximately one month prior to the full 12-month probationary period.

22. As a direct and proximate result of Bonner County's failure to adhere to the implicit terms of her employment, Read was damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
## DUE PROCESS VIOLATIONS

23. Read realleges the preceding paragraphs as if fully set forth herein.

COMPLAINT - 6

24. As a public employee, Read was entitled to certain due process attendant to her employment with Bonner County. Instead, Binkerd, acting in her official capacity as the Director of Human Resources for Bonner County, intentionally and knowingly misled Read into believing that a meeting between Read and Binkerd was a name clearing hearing, as outlined by the BC Manual at 1000.2.

25. Read reasonably relied on Binkerd's statements in believing that she had no other options in challenging her termination. Read reasonably relied on Binkerd's apparent status as an impartial decision maker.

26. As a direct and proximate cause of Binkerd's and Bonner County's due process violations, Read was damaged in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

27. Read realleges the preceding paragraphs as if fully set forth herein.

28. Read reported misuse of time off and vacation time by other 911 Dept. employees to her direct supervisor Drumright, less than six (6) months prior to her termination. From the date of her report, during which Drumwright essentially threatened that Read needed to get along to go along, Read's relationship with Drumwright deteriorated. Read, a former 911 Dept. supervisor, was terminated in violation of public policy not because she was not performing well, but because Drumwright and his favorites did not like Read's proper complaints about policy violations.

29. As a direct and proximate cause of Drumwright and Bonner County's wrongful termination of Read, she was damaged in an amount to be proven at trial.

//

//

## FIFTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

30. Read realleges the preceding paragraphs as if fully set forth herein.

31. Read was subjected to personal, painful, and unnecessary background questions as part of her pre-employment onboarding with the 911 Dept. in 2016. At no point prior, had Read ever been subjected to the same, and it is unclear whether the person questioning Read was qualified to engage in such psychological evaluation.

32. As a direct and proximate cause of Bonner County's screening practices, Read suffered emotional distress and related damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandy Read requests the following relief:

33. Damages, including back and front pay; lost benefits; out of pocket expenses; and any other damages in an amount to be proven at trial.

34. Pre- and post-judgment interest.

35. A name clearing and removal of her "termination" status from her Bonner County personnel files.

36. Costs and attorneys' fees pursuant to applicable Idaho statutes or as equity requires.

37. All other relief that this Court deems reasonable, necessary, and just sounding in law or equity.

COMPLAINT - 8

DATED this 17th day of May 2019.

    GIANTlegal PLLC

    *s/ Robin L. Haynes*
    _____
    Robin L. Haynes, ISB #8425
    Attorneys for Plaintiff

    WENDY EARLE LAW, PLLC

    Wendy J. Earle, ISB #7821
    Attorneys for Plaintiff

COMPLAINT - 9